1  ROB BONTA
   Attorney General of California
2  ANYA M. BINSACCA, State Bar No. 189613
   EDWARD KIM, State Bar No. 195729
3  Supervising Deputy Attorneys General
   CHRISTINA SEIN GOOT, State Bar No. 229094
4  KRISTIN A. LISKA, State Bar No. 315994
   Deputy Attorneys General
5    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
6    Telephone:  (415) 510-3916
     Fax:  (415) 703-5480
7    E-mail:  Kristin.Liska@doj.ca.gov
             Christina.Goot@doj.ca.gov
8
   *Attorneys for Defendants*
9
                    IN THE UNITED STATES DISTRICT COURT
10
                   FOR THE EASTERN DISTRICT OF CALIFORNIA
11

12

13 | **LETRINH HOANG, D.O., PHYSICIANS** | Case No. 2:22-cv-02147-WBS-AC
   | **FOR INFORMED CONSENT, a not-for-** |
14 | **profit organization, and CHILDREN'S** |
   | **HEALTH DEFENSE, CALIFORNIA** | **DEFENDANTS' SUBMISSION OF**
15 | **CHAPTER, a California Nonprofit** | **SUPPLEMENTAL AUTHORITY**
   | **Corporation,** | **[E.D. CAL. LOCAL R. 230(M)(2)]**
16 |                                    Plaintiffs, |
17 |        v. | Date:        January 23, 2023
   |           | Time:        1:30 p.m.
18 | **ROB BONTA, in his official capacity as** | Dept:        5
   | **Attorney General of California and, ERIKA** | Judge:       Honorable William B. Shubb
19 | **CALDERON, in her official capacity as** | Trial Date:  Not scheduled
   | **Executive Officer of the Osteopathic** | Action Filed: 12/01/2022
20 | **Medical Board of California ("OMBC"),** |
21 |                                    Defendants. |
22

23         Under USDC Eastern District Local Rule 230(m)(2), Defendants submit the following

24  notice of supplemental authority: Mark McDonald *et al*. v. Kristina D. Lawson *et al.*, USDC

25  Central District of California Case No.: 8:22-cv-01805-FWS-ADS, Order Denying Motion for

26  Preliminary Injunction, Dec. 28, 2022.  (Copy Attached.)  On December 29, 2022, Plaintiffs in

27  the McDonald matter filed a Notice of Appeal of the Order denying the Preliminary Injunction.

28  ///

                                          1
                                                    _____
                                                    Defendants' Submission of Supplemental Authority (2:22-cv-02147-WBS-AC)

1    Dated:  January 3, 2022                              Respectfully submitted,

2                                                         ROB BONTA
                                                          Attorney General of California
3                                                         ANYA M. BINSACCA
                                                          EDWARD KIM
4                                                         Supervising Deputy Attorneys General
                                                          CHRISTINA SEIN GOOT
5                                                         KRISTIN A. LISKA
                                                          Deputy Attorney General
6

7

8                                                         /s/ Aaron Lent
                                                          AARON LENT
9                                                         Deputy Attorney General
                                                          *Attorneys for Defendants*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:22-cv-01805-FWS-ADS          Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Melissa H. Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                              Not Present

**PROCEEDINGS: ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [71]**

Before the court is Plaintiffs Mark McDonald and Jeff Barke's ("Plaintiffs") Second Motion for Preliminary Injunction.  (Dkt. 71 ("Motion" or "Mot.").)  Defendants Kristina D. Lawson, in her official capacity as President of the Medical Board of California; Randy W. Hawkins, in his official capacity as Vice President of the Medical Board of California; Laurie Rose Lubiano, in her official capacity as Secretary of the Medical Board of California; Michelle Anne Bholat, David E. Ryu, Ryan Brooks, James M. Healzer, Asif Mahmood, Nicole A. Jeong, Richard E. Thorp, Veling Tsai, and Eserick Watkins, in their official capacities as members of the Medical Board of California; and Robert Bonta, in his official capacity at Attorney General of California (collectively, "Defendants"), oppose the Motion.  (Dkt. 73 ("Opposition" or "Opp.").)  The matter is fully briefed.  (*See* Dkt. 75 ("Reply").)  The court held oral argument on the Motion on December 16, 2022.

Based on the record, as applied to the applicable law, the court **DENIES** the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

## I.   Relevant Background

### A.   Plaintiffs

Dr. Jeff Barke is a physician and Dr. Mark McDonald is a psychiatrist, and both are licensed to practice medicine in California.  (Dkts. 71-2 ("McDonald Decl.) ¶ 2; 71-3 ("Barke Decl.") ¶ 2.)  Dr. Barke operates a concierge medical practice in California, while Dr. McDonald owns a psychiatric practice in the Los Angeles area. (McDonald Decl. ¶ 2; Barke Decl. ¶ 2.)  With the exception of the Medical Board of California's pending investigation against Dr. McDonald, neither has previously been disciplined by any medical regulatory authority, had his medical license suspended, or had a complaint against him sustained for unprofessional conduct.  (McDonald Decl. ¶ 29; Barke Decl. ¶ 29.)  Plaintiffs are Board-certified in specialty practices, and remain up-to-date on continuing medical education requirements and emerging medical research.  (McDonald Decl. ¶¶ 5-7; Barke Decl. ¶¶ 5-7.)

Plaintiffs have disagreed with certain aspects of the "public health response to the COVID-19 pandemic," and each describes himself as "outspoken" about the subject. (McDonald Decl. ¶¶ 15-16; Barke Decl. ¶¶ 21-22.)  In particular, Plaintiffs objected to California's "shut-down" policies, requiring children and adults to wear masks, and the early administration of COVID-19 vaccines instead of alternative medications or supplements such as ivermectin or hydroxychloroquine.  (McDonald Decl. ¶¶ 9, 18-21; Barke Decl. ¶¶ 11, 13, 15, 23.)  Plaintiffs recommend and have recommended medical treatments based on opinions they formed from their review of medical research, but that were not necessarily in accord with the prevailing positions of the Center for Disease Control or the State of California.  (*See* McDonald Decl. ¶¶ 9-14; Barke Decl. ¶¶ 12, 16, 17-19.)  In the public sphere, Plaintiffs have "advocated publicly" about their "objections to federal and state COVID-19 policies, including on social media, in various media interviews, and in [their] own published writing." (McDonald Decl. ¶ 22; Barke Decl. ¶ 28.)

In December 2021, Dr. McDonald received notice that he was placed under investigation by the Medical Board of California based on anonymous complaints regarding "posts on Twitter/Facebook about masks [that] were flagged for spreading misinformation about Covid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

and using derogatory terms for disabled people" and "alleg[ations]" Dr. McDonald was
"spreading misinformation about Covid." (McDonald Decl. ¶ 24.) Dr. McDonald notes that, in
his prior interactions with the Board, "the fact that the complaint was not made by an actual
named patient of [his] would have ended the matter," (*id.* ¶ 26), but that he was interviewed by
the Board in connection with the investigation recently in November 2022, (*id.* ¶¶ 27-28).

B.   AB 2098

AB 2098, 2021-2022 Reg. Sess. (Cal. 2022) § 1(a) (to be codified at Cal. Bus. & Prof.
Code § 2270) ("AB 2098") includes several express findings of the California Legislature. The
statue begins by noting that "[t]he global spread of the SARS-CoV-2 coronavirus, or COVID-
19, ha[d] claimed the lives of over 6,000,000 people worldwide, including nearly 90,000
Californians" at the time it was written. AB 2098 § 1(a). The statute's legislative findings state
that "[d]ata from the federal Centers for Disease Control and Prevention (CDC) shows that
unvaccinated individuals are at a risk of dying from COVID-19 that is 11 times greater than
those who are fully vaccinated," *id.* § 1(b), and "[t]he safety and efficacy of COVID-19
vaccines have been confirmed through evaluation by the federal Food and Drug Administration
(FDA) and the vaccines continue to undergo intensive safety monitoring by the CDC," *id.*
§ 1(c). The Legislature also found that "[t]he spread of misinformation and disinformation
about COVID-19 vaccines has weakened public confidence and placed lives at serious risk," *id.*
§ 1(d), and "[m]ajor news outlets have reported that some of the most dangerous propagators of
inaccurate information regarding the COVID-19 vaccines are licensed health care
professionals," *id.* § 1(e). The Legislature's findings further cite a statement from the
Federation of State Medical Boards which "warn[s] that physicians who engage in the
dissemination of COVID-19 vaccine misinformation or disinformation risk losing their medical
license, and that physicians have a duty to provide their patients with accurate, science-based
information." *Id.* § 1(f).

AB 2098 provides that "[i]t shall consitute unprofessional conduct for a physician and
surgeon to disseminate misinformation or disinformation related to COVID-19, including false
or misleading information regarding the nature and risks of the virus, its prevention and
treatment; and the development, safety, and effectiveness of COVID-19 vaccines." *Id.* § 2(a).

**CIVIL MINUTES – GENERAL**                                            **3**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

It defines "[d]isinformation" as "misinformation that the licensee deliberately disseminated with malicious intent or an intent to mislead," *id.* § 2(b)(2), and "[m]isinformation" as "false information that is contradicted by contemporary scientific consensus contrary to the standard of care," *id.* § 2(b)(4). "Disseminate means the conveyance of information from the licensee to a patient under the licensee's care in the form of treatment or advice." *Id.* § 2(b)(3). "Physician[s] and surgeon[s]" are "person[s] licensed by the Medical Board of California or the Osteopathic Medical Board of California . . . ." *Id.* § 2(b)(5).

C.     The Broader Scheme of California's Regulation of Medical Professionals[1]

California has required those practicing medicine in the state to comport with licensing and training requirements since at least 1876. *See* 1876 Cal. Stats., ch. 518, p. 792 § 1 (1876).

---

[1] Defendants request judicial notice of (1) the 1876 Act to Regulate the Practice of Medicine in the State of California, recorded at Stat. 1876, ch. 518, pp. 792-794, (Dkt. 73-2 ("D RJN"), Exh. A); (2) the report prepared by the Assembly Committee on Business and Professions on AB 2098 for the April 19, 2022, hearing on the bill, (*id.*, Exh. B); (3) the report prepared for the Assembly on AB 2098 for the bill's third reading, dated April 20, 2022, (*id.*, Exh. C); (4) the report prepared for the Senate Committee on Business, Professions, and Economic Development on AB 2098 for the June 27, 2022, hearing on the bill, (*id.*, Exh. D); (5) the report prepared for the Senate on AB 2098 for the bill's third reading, dated August 13, 2022, (*id.*, Exh. E); and (6) the report prepared for the Assembly on AB 2098 for the vote on the concurrence on Senate Amendments, dated August 22, 2022, (*id.*, Exh. F). The court **GRANTS** Defendants' requests as to Exhibits B-F, and **DENIES AS MOOT** Defendants' request regarding Exhibit A. Exhibit A is a California statute, which the court may consider without the formal necessity of taking judicial notice. *See W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*, 534 F. Supp. 3d 1209, 1224 n.14 (E.D. Cal. 2021) (noting requests for judicial notice of California statutes are "unnecessary" under Federal Rule of Evidence 201 because the "[t]he court must always apply relevant state law") (citing *Glendale Assocs., Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1154 (9th Cir. 2003)). Exhibits B-F are administrative reports related to the legislative history for AB 2098, materials of which the court may take judicial notice. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("[A court] may take judicial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

The 1876 Act permitted licenses to be refused or revoked for unprofessional conduct.  *Id.* § 10 ("The Boards of Examiners may refuse certificates to individuals guilty of unprofessional or dishonorable conduct, and they may revoke certificates for like causes.").  California courts have found such "unprofessional conduct" to include, in some circumstances, a medical practitioner's speech to patients.  *See, e.g.*, *Fuller v. Bd. of Med. Exam'rs*, 14 Cal. App. 2d 734, 740-41 (1936), *abrogated on other grounds as recognized by Hughes v. Bd. of Architectural Exam'rs*, 17 Cal. 4th 763, 784-85 (1998) (upholding sanctions on physician charged with unprofessional conduct who made false claims about his ability to treat hernias).

California law provides that the Medical Board of California is responsible for issuing or denying licenses to medical practicioners under its jurisdiction, disciplining those practicioners based on findings of unprofessional conduct, and, as a general matter, enforcing the Medical Practice Act.  Cal. Bus. & Prof. Code § 2004.  The Board investigates complaints "from the public, other licensees, from health care facilities or from the [B]oard that a physician and surgeon may be guilty of unprofessional conduct."  *Id.* § 2220(a).  Prior to the Board taking formal disciplinary action and commencing disciplinary proceedings, these investigations are conducted on a confidential basis.  (Dkt. 73-1 ("Prasifka Decl.") ¶ 7.)[2]  California law provides that "[p]rotection of the public shall be the highest priority for the Medical Board of California in exercising its licensing, regulatory, and disciplinary functions."  *Id.* § 2001.1.

California law states that the Board "shall take action against any licensee who is charged with unprofessional conduct."  *Id.* § 2234.  The definition of "unprofessional conduct" includes "[t]he commission of any act involving dishonesty or corruption that is substantially related to the qualifications, functions, or duties of a physician and surgeon," *id.* § 2234(e); "[t]he failure of a physician and surgeon to maintain adequate and accurate records relating to the provision

---

notice of records and reports of administrative bodies.") (citation and internal quotation marks omitted); *id.* ("Legislative history is properly a subject of judicial notice.") (citation omitted); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (taking judicial notice of the legislative history of California Penal Code § 148.6).
[2] Mr. Prasifka is the Executive Director of the Medical Board of California, Department of Consumer Affairs.  (Prasifka Decl. ¶ 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

of services to their patients," *id.* § 2266; the willful failure to comply with requirements relating to obtaining informed consent for sterilization procedures, *id.* § 2250; and the "conviction of any offense substantially related to the qualifications, functions, or duties of a physician and surgeon," *id.* § 2236.  More generally, "gross negligence," "repeated negligent acts," and "incompetence" are included in the definition of "unprofessional conduct." *Id.* § 2234(b), (c), (d).  Under California law, "gross negligence" is defined as "the want of even scant care or an extreme departure from the ordinary standard of conduct," *Franz v. Bd. of Med. Quality Assurance*, 31 Cal. 3d 124, 138 (1982) (citations omitted); "negligence" is a "simple departure" from the current standard of care, (Dkt. 74 ("Nuovo Decl.") ¶ 4)[3]; and the "term incompetency generally indicates an absence of qualification, ability or fitness to perform a prescribed duty or function," *Kearl v. Bd. of Med. Quality Assurance*, 189 Cal. App. 3d 1040, 1054 (1986) (citation and internal quotation marks omitted).

The "standard of care" for medical practitioners is the reasonable degree of skill, knowledge, and care as that of practitioners under similar circumstances.  *See, e.g.*, *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 1001 (1994).  Typically, the standard of care is established through expert testimony.  *See, e.g.*, *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015).  The "'essential factor' in determining the qualification of an expert witness in medical malpractice cases 'is knowledge of similarity of conditions.'"  *Avivi v. Centro Medico Urgente Med. Ctr.*, 159 Cal. App. 4th 463, 468 (2008) (quoting *Sinz v. Owens* 33 Cal.2d 749, 756 (1949)).

D.    <u>The Motion</u>

Plaintiffs challenge the constitutionality of AB 2098 on two grounds: (1) that AB 2098 is an impermissible content- and viewpoint- based restriction on speech implemented by the government in violation of the right to free speech protected by the First Amendment; and (2) that AB 2098 is void for vagueness under the Due Process Clause of the Fourteenth

---

[3] Dr. Nuovo is the Chief Medical Consultant for the California Medical Board, who has "reviewed cases of professional misconduct for the Board since April 1993."  (Nuovo Decl. ¶ 1.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:22-cv-01805-FWS-ADS               Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

Amendment.  (*See* Dkt. 68 ("FAC") ¶¶ 92-112.)  In the Motion, Plaintiffs seek to enjoin AB 2098 before it becomes effective on January 1, 2023.

## II.    Legal Standard

### A.    Preliminary Injunction

"A preliminary injunction is an extraordinary remedy that may be awarded only if the plaintiff clearly shows entitlement to such relief."  *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  A plaintiff seeking a preliminary injunction must demonstrate (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) that "the balance of equities tips in [their] favor"; and (4) that "an injunction is in the public interest."  *Id.* (quoting *Winter*, 555 U.S. at 20).  "The first factor under *Winter* is the most important," to the extent the court need not consider the remaining three elements where a plaintiff fails to show a likelihood of success on the merits.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (citations omitted).  Courts in the Ninth Circuit "also employ an alternative serious questions standard, also known as the sliding scale variant of the *Winter* standard."  *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up).  Under that formulation, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* (alterations and internal quotation marks omitted) (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

## III.    Discussion

### A.    Plaintiffs' Standing

Defendants argue Plaintiffs lack Article III standing because neither has alleged a sufficiently imminent threat of enforcement to sustain a pre-enforcement claim, and otherwise

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                     Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

have not adequately pleaded an injury in fact.  (Opp. at 7-10.)  Plaintiffs maintain the chilling effect of AB 2908 on their ability to provide medical advice to their patients sufficiently establishes standing, especially when coupled with the state's enthusiasm to enforce AB 2098 and Plaintiffs' asserted vagueness in the statute.  (Reply at 4-10.)

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, --- U.S. ----, 141 S. Ct. 2190, 2203 (June 25, 2021) (citation omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk"' that the harm will occur."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).

"Constitutional challenges based on the First Amendment present unique standing considerations."  *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).  In light of the "chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences."  *Id.* (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965); *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996)).  Accordingly, a "chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not based on a fear of future injury that itself is too speculative to confer standing."  *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) (cleaned up).

A plaintiff satisfies the injury-in-fact requirement required for pre-enforcement standing where the plaintiff "alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Driehaus*, 573 U.S. at 159 (citation and internal quotation marks omitted).  Courts in the Ninth Circuit "consider (1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).

The court previously dismissed Plaintiffs' initial complaint and concurrent motion for preliminary injunction based on the court's finding Plaintiffs lacked Article III standing. (Dkt. 68.)  On the record before it, the court finds Plaintiffs' renewed materials adequately demonstrate standing.

The court finds the first factor weighs in favor of finding Plaintiffs have sufficiently demonstrated standing.  Plaintiffs have submitted they have, for example, "raised concerns about the new vaccines developed to combat COVID-19," (Barke Decl. ¶ 27; *accord* McDonald Decl ¶ 21; FAC ¶¶ 49-50, 86-87), a position in tension with AB 2098's legislative findings that the "safety and efficacy of COVID-19 vaccines have been confirmed," AB 2098 § 1(c), and reduce the risk of death elevenfold, *id.* § 1(b).  Plaintiffs continue to recommend medical treatments based on opinions they form from their review of medical research, and such opinions have previously not aligned with the positions of the Center for Disease Control or the State of California.  (*See* McDonald Decl. ¶¶ 9-14; Barke Decl. ¶¶ 12, 16, 17-19; FAC ¶¶ 38-76.)  For the purposes of standing, the court finds Plaintiffs have sufficiently established a "concrete plan to violate" AB 2098 within the meaning of the applicable doctrine.  *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (holding plaintiff's members who "maintain[ed] policies that [were] presently in conflict with [the challenged California Assembly Bill], according to [] allegations in the complaint," were "deemed to have articulated a concrete plan to violate it" for purposes of standing) (citations and internal quotation marks omitted), *cert. denied sub nom. California Trucking Ass'n, Inc. v. Bonta*, 142 S. Ct. 2903 (2022).  While Defendants note the text of AB 2098 does not cover public advocacy, (*see* Opp. at 13), which ostensibly suggests that the pending investigation against Dr. McDonald is not related to the statute itself, the court nonetheless finds Plaintiffs' other allegations and supporting declarations are sufficient to find this factor favors finding standing.

The second factor also weighs in favor of finding Plaintiffs have standing.  Defendants principally argue that Plaintiffs both aver their medical advice and treatments have always

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

complied with the applicable standard of care, and liability under AB 2098 only attaches where a medical professional violates the standard of care.  (*See* Opp. at 8 (citing McDonald Decl. ¶ 12; Barke Decl. ¶ 18).)  But this statement of Plaintiffs' *belief* is not necessarily determinative of the possibility AB 2098 could be enforced against them; as noted above, Plaintiffs also aver that their opinions have, at times, been at odds with those of medical authorities.  Importantly, Defendants' have not "disavow[ed] enforcement" of AB 2098 against Plaintiffs specifically during this litigation, which the court may consider as "strong evidence that [California] intends to enforce the law."  *See Cal. Trucking*, 996 F.3d at 653.  Moreover, in "in a pre-enforcement challenge that alleges a free speech violation under the First Amendment," the plaintiff "need only demonstrate that a threat of potential enforcement will cause him to self-censor, and not follow through with his concrete plan to engage in protected conduct."  *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014).  Here, Plaintiffs have alleged AB 2098 will "force[] [them] to choose between providing [their] best medical judgment and censoring that judgment to comply with the law" based on the their "fear that the [Medical] Board [of California] will use this new authority to threaten [their] medical license[s]," and submitted specific facts to support the reasonableness of that fear.  (Barke Decl. ¶ 35; *accord* McDonald Decl. ¶ 35; FAC ¶¶ 60, 91.)  In light of these considerations, the court finds the second factor weighs in favor of finding standing.

Because the record indicates AB 2098, as a statute that is not yet effective, has no history of enforcement, the third factor weighs against finding Plaintiffs have standing.  However, "the history of enforcement, carries little weight when the challenged law is relatively new and the record contains little information as to enforcement."  *Tingley*, 47 F.4th at 1069 (9th Cir. 2022) (citation and internal quotation marks omitted).  Accordingly, "[t]he sparse enforcement history weighs against standing but 'is not dispositive.'"  *Id.* (citations and internal quotation marks omitted).

Taking into account Plaintiffs' declarations, the FAC, and AB 2098's text, the court finds Plaintiffs' "fear [of prosecution] is reasonable."  *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2018); *Tingley*, 47 F.4th at 1069 (holding plaintiff satisfied Article III's standing requirement where "the first two factors [were] satisfied by [the complaint's] "'general

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

factual allegations of injury'" and there was a limited history of prosecution under the
challenged statute because it was recently enacted).

    B.    <u>Likelihood of Success on the Merits of Plaintiffs' Void-for-Vagueness Challenge</u>

        1.    *Vagueness*

Plaintiffs assert AB 2098 is void for vagueness, challenging its language as too
ambiguous and broad such that the statute (1) fails to put a person of ordinary intelligence on
notice of the conduct it prohibits; and (2) invites arbitrary enforcement.  (Mot. at 26-28; Reply
at 10-15.)  Defendants argue AB 2098's definitions provide adequate context such that a
medical practitioner of ordinary intelligence would understand its requirements, noting that the
measure incorporates standards familiar to California's laws regulating medical practice.  (Opp.
at 24-28.)

"[A]n enactment is void for vagueness if its prohibitions are not clearly defined."
*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  The vagueness doctrine "incorporates
two related requirements."  *Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019).  "First,
'laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is
prohibited, so that he may act accordingly.'"  *Id.* (alteration in original) (quoting *Grayned*, 408
U.S. at 108).  Second, the "vagueness doctrine's second requirement aims to avoid 'arbitrary
and discriminatory enforcement,' and demands laws 'provide explicit standards for those who
apply them.'"  *Id.* (quoting *Grayned*, 408 U.S. at 108).  As a general matter, "to raise a
vagueness argument, Plaintiffs' conduct must not be 'clearly' prohibited by the ordinances at
issue."  *Hunt v. City of Los Angeles*, 638 F.3d 703, 710 (9th Cir. 2011); *see also Holder v.
Humanitarian L. Project*, 561 U.S. 1, 18-19 (2010) ("A plaintiff who engages in some conduct
that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct
of others.") (citation omitted).

The first requirement is ordinarily satisfied where the challenged law provides "'fair
notice' of the conduct [the] statute proscribes."  *Sessions v. Dimaya*, --- U.S. ----, 138 S. Ct.

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

1204, 1212 (2018) (citation omitted).  "But where First Amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required, and courts ask whether language is sufficiently murky that speakers will be compelled to steer too far clear of any forbidden areas."  *Edge*, 929 F.3d at 664 (cleaned up).  However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Humanitarian L. Project*, 561 U.S. at 18 (quoting *Williams*, 553 U.S. at 304); *see also Grayned*, 408 U.S. at 110 ("Condemned to the use of words, we can never expect mathematical certainty from our language.").  "Furthermore, in analyzing whether a statute's vagueness impermissibly chills First Amendment expression, it is necessary to consider the context in which the statute operates."  *See Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1154 (9th Cir. 2001) (collecting cases).

The text of AB 2098 states that "[i]t shall consitute unprofessional conduct for a physician and surgeon to disseminate misinformation or disinformation related to COVID-19, including false or misleading information regarding the nature and risks of the virus, its prevention and treatment; and the development, safety, and effectiveness of COVID-19 vaccines."  AB 2098 § 2(a).  The statute defines "[d]isinformation" as "misinformation that the licensee deliberately disseminated with malicious intent or an intent to mislead," *id.* § 2(b)(2), and "[m]isinformation" as "false information that is contradicted by contemporary scientific consensus contrary to the standard of care," *id.* § 2(b)(4).  Under AB 2098, "[d]isseminate means the conveyance of information from the licensee to a patient under the licensee's care in the form of treatment or advice."  *Id.* § 2(b)(3).  "Physician[s] and surgeon[s]" are "person[s] licensed by the Medical Board of California or the Osteopathic Medical Board of California . . . ."  *Id.* § 2(b)(5).

Where "the plain meaning of a statute indicates a particular result, the 'judicial inquiry is complete.'"  *Salisbury v. City of Santa Monica*, 998 F.3d 852, 859 (9th Cir. 2021) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002)).  And the court "may impose a limiting construction on a statute" where a statute is "'readily susceptible' to such a construction."  *Reno v. ACLU*, 521 U.S. 844, 873 (1997) (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988)).

**CIVIL MINUTES – GENERAL**

12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                          Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

By its terms, AB 2098 applies to physicians and surgeons licensed in California.  The measure's definition of "misinformation" is comprised of three components: (1) demonstrably false information; (2) contradicted by contemporary scientific consensus; and (3) contrary to the standard of care.  Though "contrary to the standard of care" immediately follows "contradicted by contemporary scientific consensus" without a conjunction, construing the statute in light of California law's established definition of "standard of care" as the skill, knowledge, and care exercised by practitioners under similar circumstances, *see Flowers*, 8 Cal. 4th at 1001; *Lattimore*, 239 Cal. App. 4th at 968, it is apparent from the statute that the "contrary to the standard of care" requirement imposes a burden on the state to demonstrate that treatment or advice which would otherwise qualify as "false" and "contradicted by contemporary scientific consensus" must be additionally violative of that familiar standard.  Moreover, as Defendants concede, to the extent a scientific consensus is unclear, AB 2098 would not impose liability because there is nothing to contradict.  (*See* Opp. at 26.)  In other words, to be "misinformation" under AB 2098, the state must show that a scientific consensus exists, the information provided by a surgeon or physician both runs contrary to it and is demonstrably false, and providing that information in the context of treatment or advice to a patient would be contrary to the skill, knowledge, and care exercised by a like colleague in similar circumstances.  Accordingly, the court finds "misinformation" is not impermissibly vague, in that it requires, by its statutory text, a false statement of information that is contradicted by contemporary scientific consensus, which further runs afoul of the applicable standard of care.

"Disinformation" under the statute is "misinformation" that is "deliberately disseminated with malicious intent or an intent to mislead," e.g., misinformation provided with fraudulent intent.  Such a "scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982); *see also Cal. Tchrs. Ass'n*, 271 F.3d at 1154 (holding requirement that educator could be held liable for "refus[ing] to implement" terms of proposition so long as such refusal was done "willfully and repeatedly" was sufficient to mitigate "any vagueness" regarding proposition without necessitating a "definit[ive]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

interpret[ation] [of] the phrase 'willfully and repeatedly'"). The court thus finds the term "disinformation" is not impermissibly vague.

Additionally, "misinformation" and "disinformation" must be propagated in a particular manner and with respect to certain subject matters to fall within AB 2098's reach. The statute penalizes the "disseminat[ion]" of "mis-" and "dis-" information, which is defined as "the conveyance of information from the licensee to a patient under the licensee's care in the form of treatment or advice." Accordingly, AB 2098 does not reach public advocacy; its scope is limited to information provided in the context of treatment or advice of a particular patient. Finally, the statute covers only advice and treatment "related to COVID-19," and gives as examples "false or misleading information regarding the nature and risks of the virus, its prevention and treatment; and the development, safety, and effectiveness of COVID-19 vaccines." Thus, the statute defines the subject matter it covers.

In sum, AB 2098 defines "misinformation" and "disinformation" by reference to familiar standards of medical regulations and the opinions of the medical community; applies only to licensed physicians and surgeons; explicitly states the subject matter it covers and provides examples of covered treatment and advice; and expressly limits its reach to treatment or advice provided to a particular patient. Accordingly, the court finds that AB 2098 is not impermissibly vague as applied to licensed doctors and physicians such as Plaintiffs. *See United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (noting "terms void for vagueness lack 'statutory definitions, narrowing context, or settled legal meanings'") (quoting *Williams*, 553 U.S. at 306); *id.* (explaining "a statute's vagueness is either susceptible to judicial construction or is void for vagueness based on the application of traditional rules for statutory interpretation" the latter of which "consistently favor[] that interpretation of legislation which supports its constitutionality") (alteration in original) (internal quotation marks omitted) (citing *Bouie v. Columbia*, 378 U.S. 347, 355 n.5 (1964); *Screws v. United States*, 325 U.S. 91, 98 (1945)).

While a particular limitation included in an otherwise permissibly defined legal standard does not necessarily, "standing alone," survive a vagueness challenge, *cf. Reno*, 521 U.S. at 873, the opposite situation is presented here. AB 2098 includes, as part of its more *expansive*

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:22-cv-01805-FWS-ADS                     Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

proscription of prohibited acts, those which contravenes the applicable "standard of care" long familiar to California's medical malpractice regulations, among the other limitations discussed above.  The incorporation of this term as a necessary, but not sufficient, condition predicate to liability under AB 2098 further supports the court's conclusion.  *See Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005) ("This [C]ircuit has previously recognized that otherwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity.") (citation omitted).

Plaintiffs contend that AB 2098 is vague to the extent it creates a chilling effect on their ability to speak openly and freely with their patients when giving medical advice.  "The touchstone of a facial vagueness challenge in the First Amendment context, however, is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled."  *See Cal. Tchrs. Ass'n*, 271 F.3d at 1152 (citing *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 60 (1976)).  As discussed above, the court finds AB 2098 is not vague.  Moreover, given the express limitations on AB 2098's reach and explicitly defined terminology, especially considering AB 2098 does not prevent Plaintiffs or other medical professionals from publicly advocating for their views regarding the prevailing scientific consensus in any respect, the court finds the risk that the statute's margins would chill otherwise legitimate speech absent and thus insufficient to justify striking down the statute.

Accordingly, the court finds AB 2098 is not void-for-vagueness under the Fourteenth Amendment.

## CIVIL MINUTES – GENERAL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

C.        Likelihood of Success on the Merits of Plaintiffs' First Amendment Claim

1.        *The Extent to Which AB 2098 Regulates Speech*

i.        *AB 2098 Incidentally Burdens Speech as a Regulation of Professional Conduct*

Plaintiffs argue AB 2098 is unconstitutional under the First Amendment because it discriminates against speech based on its content and viewpoint.  (Mot. at 15-21; Reply at 10-17.)  Plaintiffs further contend that AB 2098 fails the strict scrutiny analysis under which content-based restrictions on speech are evaluated, noting the Supreme Court abrogated the "professional speech" doctrine previously recognized in this Circuit in *Nat'l Inst. of Fam. & Life Advocs. v. Becerra* ("*NIFLA*"), --- U.S. ----, 138 S. Ct. 2361, 2371-72 (June 26, 2018). (Mot. at 17, 21-26; Reply at 10-17.)  Defendants maintain AB 2098 is a permissible regulation of medical practitioners' conduct in treating patients that only incidentally burdens speech in a manner consistent with California's similar regulations of the medical field, and thus either satisfies the applicable rational basis review or is valid regardless as part of the historical tradition of states' medical malpractice laws.  (Opp. at 10-18.)  Alternatively, Defendants argue that AB 2098 passes strict scrutiny if it applies, because it targets the narrow subset of speech posing the greatest risk to patient health and safety.  (*Id.* at 18-24.)

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'"  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting U.S. CONST. amend. I).  In evaluating a free speech claim, courts first "assess whether the law regulates speech in the first place," *Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 960 (9th Cir. 2021), *cert. denied*, 213 L. Ed. 2d 1091 (June 27, 2022), before proceeding to ask whether the statute is "content based or content neutral," *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017).  The first inquiry stems from the law's treatment of "restrictions on protected expression [as] distinct from restrictions on economic activity or, [stated] more generally, on nonexpressive conduct." *Mobilize the Message LLC v. Bonta*, 50 F.4th 928, 935 (9th Cir. 2022) (quoting *Sorrell v. IMS*

**CIVIL MINUTES – GENERAL**

16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

*Health Inc.*, 564 U.S. 552, 567 (2011)).  Thus, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* (quoting *Sorrell*, 564 U.S. at 567).  As crucially relevant here, "States may regulate professional conduct, even though that conduct incidentally involves speech." *Tingley*, 47 F.4th at 1074 (quoting *NIFLA*, 138 S. Ct. at 2372).

As relevant here, the Ninth Circuit in *Tingley* considered the import of the Supreme Court's abrogation of the professional speech doctrine in *NIFLA* on the Circuit's previous precedent in *Pickup v. Brown*, 740 F.3d 1208, 1221 (9th Cir. 2014), *abrogated in part by NIFLA,* 138 S. Ct. 2361.  "Noting that the line between conduct and speech can be difficult to discern," the Ninth Circuit "develop[ed] a continuum approach in *Pickup* for determining whether a law regulates the speech or conduct of professionals." *Tingley*, 47 F.4th at 1072 (citing *Pickup*, 740 F.3d at 1227).  Prior to *NIFLA*'s partial abrogation of the "continuum" approach in *Pickup*, on one end, a medical professional's "engagem[ent] in [] public dialogue" received "robust" First Amendment protection, even if "advocat[ing] [for] a treatment that the medical establishment considers outside the mainstream, or even dangerous." *Pickup*, 740 F.3d at 1227; *Tingley*, 47 F.4th at 1072-73.  On the other, was "the regulation of professional *conduct*, where the state's power is great, even though such regulation may have an incidental effect on speech." *Pickup*, 740 F.3d at 1229; *Tingley*, 47 F.4th at 1073.  The Ninth Circuit in *Pickup* additionally held that speech "within the confines of a professional relationship" fell "[a]t the midpoint of the continuum," and stated the now-abrogated, categorical proposition that "First Amendment protection of a professional's speech is somewhat diminished." *Pickup*, 740 F.3d at 1228; *see Tingley*, 47 F.4th at 1073; *id.* at 1074 (noting "[t]here is no question that *NIFLA* abrogated the professional speech doctrine, and its treatment of all professional speech *per se* as being subject to intermediate scrutiny").  But ultimately, the Ninth Circuit in *Tingley* held that "[t]he Supreme Court's intervening decision in *NIFLA* [did] not require [courts] to abandon [the] analysis in *Pickup* insofar as it related to conduct," *Tingley*, 47 F.4th at 1073, and noted that the Supreme Court in *NIFLA* recognized an "exception, which corresponds to the holding in *Pickup*, [] that 'States may regulate professional conduct, even though that conduct incidentally involves speech,'" *id.* at 1074 (quoting *NIFLA*, 138 S. Ct. at 2372).

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

Both *Tingley* and *Pickup* concerned "nearly identical" laws banning the practice of conversion therapy in Washington and California, respectively.  *See Tingley*, 47 F.4th at 1071-72 (comparing statutes).  In *Pickup*, the Ninth Circuit held the statute at issue "regulate[d] conduct[,]" where it "ban[ned] a form of treatment for minors; it [did] nothing to prevent licensed therapists from discussing the pros and cons of [the treatment] with their patients." *Pickup*, 740 F.3d at 1229.  Accordingly, because it "regulate[d] only treatment, while leaving mental health providers free to discuss and recommend, or recommend against, [the treatment]" the Ninth Circuit "conclude[d] that any effect [the statute] may have [had] on free speech interests [was] merely incidental." *Id.* at 1231.  Finding itself bound by *Pickup*, the Ninth Circuit in *Tingley* found the Washington law satisfied rational basis review.  *Tingley*, 47 F.4th at 1077-78.

In contrast, the Ninth Circuit has previously struck down a federal enforcement policy under which a doctor's license could be revoked if they recommended medical marijuana to a patient as an impermissible burden on a doctor's First Amendment speech rights.  *Conant v. Walters*, 309 F.3d 629, 638-39 (9th Cir. 2002).  After California decriminalized the use of marijuana for limited medical purposes and immunized physicians from prosecution under state law for recommending or approving of its use for those medical purposes, the federal government enacted a policy that "declared that a doctor's 'action of recommending or prescribing Schedule I controlled substances [to be] not consistent with the "public interest" (as that phrase is used in the federal Controlled Substances Act)' and that such action would lead to revocation of the physician's registration to prescribe controlled substances." *Id.* at 632.  The Ninth Circuit reasoned that this regulation "condemn[ed] expression of a particular viewpoint, i.e., that medical marijuana would likely help a specific patient." *Id.* at 637.  The Circuit's analysis also referenced the facts that the government's policy sought "to punish physicians on the basis of the content of doctor-patient communications" and that "[o]nly doctor-patient conversations that include[d] discussions of the medical use of marijuana trigger[ed] the policy." *Id.*

In this case, the court finds *Pickup*'s analysis of the conduct/speech dichotomy on-point and *Conant* distinguishable.  As the Ninth Circuit noted in *Pickup*, "[m]ost, if not all, medical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

treatment requires speech, but that fact does not give rise to a First Amendment claim when the state bans a particular treatment." 740 F.3d at 1055. "When a drug is banned, for example, a doctor who treats patients with that drug does not have a First Amendment right to speak the words necessary to provide or administer the banned drug." *Id.* (citing *Conant*, 309 F.3d at 634-35 (noting the parties agreed that the government possessed adequate authority to ban prescribing marijuana)). As here, AB 2098 regulates only "the conveyance of ['mis-' and 'dis-'] information from the [physician or surgeon] to a patient under the [physician's or surgeon's] care in the form of treatment or advice," *see* AB 2098 § 2(b)(3), i.e., only the information underlying the covered medical professional's advice rather than their particular opinion. It "does not to prevent licensed [medical professionals] from discussing the pros and cons" of their preferred course of treatment. *See Pickup*, 740 F.3d at 1055. It only requires that, while administering medical treatment or advice to a COVID-19 patient, a doctor avoid providing demonstrably false information that is contradicted by the prevailing scientific consensus in manner violative of the standard of care. "It is the limited reach of [AB 2098] that distinguishes the present case[] from *Conant*, in which the government's policy prohibited speech *wholly apart* from the actual provision of treatment." *See id.* at 1055. "[U]nlike in *Conant*, 309 F.3d at 639, [AB 2098] allows discussions about treatment, recommendations to obtain treatment, and expressions of opinions." *See id.* at 1056. Even in *Pickup*, which considered talk therapy entirely "administered through speech," the Ninth Circuit held the statute banning conversion therapy stood "on the same First Amendment footing as other forms of medical or mental health treatment" and thus was "subject to deferential review just as are other regulations of the practice of medicine." *Id.* at 1056.

Thus, unlike the federal policy at issue in *Conant*, AB 2098 does not render the provision of a particular treatment or recommendation from a medical provider *malum in se*. *See id.*; *Conant*, 309 F.3d at 639. As noted above, AB 2098 does not prohibit a licensed professional from engaging in discussions about treatment, recommendations to obtain treatment, and expressing a particular medical opinion. It only requires that those discussions, recommendations, and opinions must not be based on, or communicate as though they were settled scientific facts, false information. AB 2098 is further confined by its requirements that a medical professional's advice must be contrary to the applicable standard of care, that it is

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

unsupported by scientific consensus, and communicated directly to a patient under that provider's care.

Of particular relevance here, the Ninth Circuit in *Pickup*, quoting in part the district court's opinion affirmed by the Ninth Circuit in *Conant*, instructed district courts on the salient issue presented in this case:

> [D]octors are routinely held liable for giving negligent medical advice to their patients, without serious suggestion that the First Amendment protects their right to give advice that is not consistent with the accepted standard of care.  A doctor "may not counsel a patient to rely on quack medicine.  The First Amendment would not prohibit the doctor's loss of license for doing so."

740 F.3d at 1228 (citation omitted) (quoting *Conant v. McCaffrey*, 2000 WL 1281174, at *13 (N.D. Cal. Sept. 7, 2000), *aff'd sub nom. Conant*, 309 F.3d 629).[4]

_____

[4] Though the court finds AB 2098 independently satisfies the applicable scrutiny analysis as set forth below, the court notes this passage in *Pickup* appears to foreclose a First Amendment challenge to regulations prohibiting the provision of medical advice that is inconsistent with the applicable standard of care to a patient.  As discussed above, AB 2098 requires any advice or treatment falling within its ambit to be both provided to a patient within the confines of the doctor-patient relationship, and the statute's penalty subjects a covered medical provider to the potential revocation of their license to practice medicine.  Accordingly, this discussion *Pickup*—which the court finds survives the Ninth Circuit's formulation of *NIFLA*'s limited abrogation of *Pickup* as set forth in *Tingley*—appears to foreclose a First Amendment challenge materially indistinguishable from Plaintiffs' First Amendment challenge to AB 2098 and may thus bind the court regardless of its independent analysis.  *See Tingley*, 47 F.4th at 1073 ("*NIFLA* abrogated only the 'professional speech' doctrine—the part of *Pickup* in which we determined that speech within the confines of a professional relationship (the 'midpoint' of the continuum) categorically receives lesser scrutiny.") (citing *NIFLA*, 138 S. Ct. at 2372); *see also*

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

Against this backdrop, the court finds AB 2098 regulates professional conduct, and any burden it imposes on speech is incidental to a doctor's or physician's proscribed treatment for COVID-19.  *See Pickup*, 740 F.3d at 1055-56; *Tingley*, 47 F.4th at 1071-72; *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1225-26 (11th Cir. 2022) (holding any burden on speech imposed by act regulating "advising and assisting individuals or groups on appropriate nutrition intake by integrating information from the nutrition assessment" was "an incidental part of regulating the profession's conduct" despite the fact that "a dietician or nutritionist must get information from her clients and convey her advice and recommendations" because the underlying information and assessment of client's needs were not speech), *cert. denied sub nom. Del Castillo v. Ladapo*, No. 22-135, 2022 WL 17408180 (U.S. Dec. 5, 2022); *cf. Doe v. Rokita*, 54 F.4th 518, 520-21 (7th Cir. 2022) (stating *NIFLA* "holds that physicians' speech is not exempt from analysis under the First Amendment and that a state may not enforce requirements disconnected from medical care.  But it does not question the propriety of requirements that medical professionals alert patients to laws that affect medical choices.").

    ii.    *AB 2098 is Rationally Related to a Legitimate State Interest*

Though Plaintiffs maintained that strict scrutiny applies to AB 2098, Plaintiffs noted at oral argument that, if rational basis review applied in this case, their challenge would be significantly more difficult.  Under such review, "[a] law is 'presumed to be valid and will be sustained' under rational basis review if it is 'rationally related to a legitimate state interest.'" *Tingley*, 47 F.4th at 1078 (citation omitted).

The court finds that California has legitimate, if not compelling, interests in assuring safe medical care for its citizens and regulating the practice of medicine within its borders.  *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("[T]he States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect

_____

*Enying Li v. Holder*, 738 F.3d 1160, 1164 (9th Cir. 2013) ("Well-reasoned dicta is the law of the [C]ircuit.") (citing *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir.2001) (en banc)).

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions."); *Recht v. Morrisey*, 32 F.4th 398, 413 (4th Cir. 2022) (a state "unquestionably has a compelling interest in assuring safe health care for the public") (citation and internal quotation marks omitted), *cert. denied*, No. 22-175, 2022 WL 17573477 (U.S. Dec. 12, 2022); *cf. EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 437 (6th Cir. 2019) (noting "[a]s part of States' regulation of the medical profession, they may require doctors to provide information to their patients to ensure patients can give their informed consent").  The fact AB 2098 concerns COVID-19 specifically does not preclude a finding that AB 2098 concerns legitimate state interests.  Courts around the country have held that limiting the transmission of COVID-19 to mitigate the effects of the pandemic on societal and economic interests is a compelling government interest.  *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest."); *Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 224 n.10 (N.D.N.Y. 2020) ("Multiple courts that have considered the issue have concluded that controlling the spread of COVID-19 counts as a compelling interest.") (internal quotation marks omitted) (collecting cases); *Case v. Ivey*, 542 F. Supp. 3d 1245, 1279 (M.D. Ala. 2021), *aff'd*, 2022 WL 2441578 (11th Cir. July 5, 2022) (stating "preventing the spread of the COVID-19 virus" is a "compelling state interest") (citation omitted); *cf. We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir.) (noting "the State has an indisputably compelling interest in ensuring that the employees who care for hospital patients, nursing home residents, and other medically vulnerable people in its healthcare facilities are vaccinated against COVID-19, not just to protect them and those with whom they come into contact from infection, but also to prevent an overburdening of the healthcare system"), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), *and cert. denied sub nom. Dr. A. v. Hochul*, 213 L. Ed. 2d 1126 (June 30, 2022); *Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen., Fla. Dep't of Health*, 50 F.4th 1126, 1156-58 (11th Cir. 2022) (Rosenbaum, J., dissenting) (describing COVID-19's death toll, potential long-term medical complications, and effects on commerce).  Though Plaintiff disputes the relevance of COVID-19 pandemic-related interests at this point in time, (*see* Reply at 13), the materials before the court do not set forth a principled reason to break from the authority set forth above on the basis that AB 2098

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

specifically addresses treatment provided in connection with COVID-19.  Accordingly, the court finds that AB 2098 concerns legitimate state interests.

Rational basis review "asks whether 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (quoting *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993)).  Stated differently, the court "ask[s] only whether there are 'plausible reasons for [the Legislature's] action,' and if there are, '[its] inquiry is at an end.'"  *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013) (quoting *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).  "This inquiry is not a 'license for courts to judge the wisdom, fairness, or logic of legislative choices.'"  *Fowler Packing*, 844 F.3d at 815 (quoting *Beach Comms.*, 508 U.S. at 313).

The California Legislature made numerous findings in enacting AB 2098.  The statute recites that "[t]he global spread of the SARS-CoV-2 coronavirus, or COVID-19, ha[d] claimed the lives of over 6,000,000 people worldwide, including nearly 90,000 Californians" at the time it was drafted.  AB 2098 § 1(a).  The Legislature also found that "[d]ata from the federal Centers for Disease Control and Prevention (CDC) shows that unvaccinated individuals are at a risk of dying from COVID-19 that is 11 times greater than those who are fully vaccinated," *id.* § 1(b), and "[t]he safety and efficacy of COVID-19 vaccines have been confirmed through evaluation by the federal Food and Drug Administration (FDA) and the vaccines continue to undergo intensive safety monitoring by the CDC," *id.* § 1(c).  The Legislature noted the particular concern that "[t]he spread of misinformation and disinformation about COVID-19 vaccines has weakened public confidence and placed lives at serious risk," *id.* § 1(d), and "[m]ajor news outlets have reported that some of the most dangerous propagators of inaccurate information regarding the COVID-19 vaccines are licensed health care professionals," *id.* § 1(e).  The Legislature's findings also reference the Federation of State Medical Boards' "warning that physicians who engage in the dissemination of COVID-19 vaccine misinformation or disinformation risk losing their medical license, and that physicians have a duty to provide their patients with accurate, science-based information."  *Id.* § 1(f).

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

        The court finds AB 2098 is rationally related to California's legitimate state interests.
This is not a situation in which California arbitrarily selected a particular disease to regulate
more strictly than others.  California enacted AB 2098 in the context of these findings that
"mis-" and "dis-" information underlying medical providers' care of their patients suffering
from COVID-19 is both widespread and has the potential to aggravate the effects of a
potentially deadly disease.  The court does not find that the evidence in the record or applicable
law provides sufficient cause for the court to doubt these findings.  And, as discussed above, a
physician or surgeon's liability under AB 2098 is further limited by reference to the prevailing
scientific consensus, the familiar concept of the "standard of care," and the required showing of
falsity.  The consequence of a violation of AB 2098 is that the offending physician or surgeon
would be deemed to have committed "unprofessional conduct," a sanction rooted in California
law since, at least, 1876.  In light of the findings of the California legislature indicating the
spread of "mis-" and "dis-" information in COVID-19 treatments is a widespread issue that
could cause significant harm to patients' health, as well as the limitations embedded in AB
2098, the court finds the statute is sufficiently tailored to California's legitimate state interests.
*See Tingley*, 47 F.4th at 1084 (holding Washington's law was "appropriately tailored" to its
asserted interest in protecting the well-being of youth where "Washington reasonably relied on
scientific evidence and the consensus of every major medical organization to prohibit
[conversion therapy] on all children" considering "[t]he difficulties in having therapists,
legislators, and judges assess whether a minor is consenting, without coercion, to a therapeutic
practice that every major medical organization has opposed"); *Pickup*, 740 F.3d at 1232
(holding legislature acted rationally in decision to protect well-being of minors where
legislature relied on report of the Task Force of the American Psychological Association and
"opinions of many other professional organizations" of which the "overwhelming consensus"
was  that demonstrated prohibited treatment was harmful and ineffective despite "some
evidence" it was "safe and effective").

        For the reasons set forth above, the court finds AB 2098 is rationally related to legitimate,
if not compelling, government interests.  Accordingly, the court finds Plaintiffs have not
demonstrated serious questions going to a likelihood of success on their First Amendment
challenge.

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

   iii. *AB 2098 Falls Within the Longstanding Tradition of Regulations on the Practice of Medical Treatments*

  The court observes that the Supreme Court has permitted "restrictions upon the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality" without the application of strict scrutiny.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83, (1992) (citations and internal quotation marks omitted); *see also United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (plurality op.) (stating that content-based speech restrictions have been permitted for a "few historic and traditional categories" of speech, including incitement, obscenity, defamation, speech integral to criminal conduct, "so-called 'fighting words,'" child pornography, fraud, true threats, and "speech presenting some grave and imminent threat that the government has the power to prevent").  Along these lines, the Ninth Circuit in *Tingley* stated that "[t]he Supreme Court has recognized that laws regulating categories of speech belonging to a 'long . . . tradition' of restriction are subject to lesser scrutiny."  47 F.4th at 1079 (quoting *NIFLA*, 138 S. Ct. at 2372).  As stated by the Ninth Circuit:

  What follows from this line of cases [(referring to *NIFLA*, *Alvarez*, *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 792 (2011), and *United States v. Stevens*, 559 U.S. 460 (2010))] is that in some circumstances, a seemingly novel restriction on speech, even if content-based, may be tolerated, but only if there is a "long (if heretofore unrecognized) tradition" of that type of regulation, [*NIFLA* 138 S. Ct. at 2372], and the category is not too broad.  Whether we view Washington's law as falling into the exception from heightened scrutiny for regulations on professional conduct that incidentally involve speech . . . , or, alternatively, . . . , as falling into the tradition of regulations on the practice of medical treatments, the law satisfies the requisite scrutiny.

*Id.* at 1080.

**CIVIL MINUTES – GENERAL**

25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

The Ninth Circuit in *Tingley* proceeded to recognize the "long (if heretofore unrecognized) tradition of regulation governing the practice of those who provide health care within state borders." *Id.* (citing *Dent v. W. Va.*, 129 U.S. 114 (1889); *Hawker v. People of N.Y.*, 170 U.S. 189, 191 (1898)). The Ninth Circuit further emphasized that "such regulation of the health professions has applied to all health care providers," *id.* and "the [Supreme] Court has upheld substantive regulations on medical treatments based upon differences of opinion and, in doing so, has relied upon the positions of [] professional organizations . . . , even when those positions have changed over time," *id.* at 1081. The Ninth Circuit cautioned against discounting the "long tradition of this type of regulation" in a way that "would endanger centuries-old medical malpractice laws that restrict treatment and the speech of health care providers," *id.*, emphasizing that "[w]hen a health care provider acts or speaks about treatment with the authority of a state license, that license is an 'imprimatur of a certain level of competence,'" *id.* at 1082 (quoting *Otto v. City of Boca Raton*, 41 F.4th 1271, 1294 (11th Cir. 2022) (Rosenbaum, joined by Prior, JJ., dissenting in the denial of rehearing en banc)).

While, as discussed above, the court finds AB 2098 independently satisfies the applicable scrutiny analysis, the court further observes binding case law would otherwise militate towards upholding the statute "as falling into the tradition of regulations on the practice of medical treatments" if not "falling into the exception from heightened scrutiny for regulations on professional conduct that incidentally involve speech." *Id.* at 1080; *see id.* at 1080-83; *see also Doe*, 54 F.4th at 520 ("The norm that units of government may require physicians (and other professionals) to provide accurate information to their clients long predates [*Planned Parenthood of S.E. Pa. v.*] *Casey*[, 505 U.S. 833, 882 (1992)] and has not been disturbed since."). California law follows this long tradition recognized in *Tingley*; going back to as early as 1876, California statutes have provided for the discipline of medical practitioners and the revocation of their licenses for "unprofessional conduct." *See* 1876 Cal. Stats., ch. 518, p. 792 § 10 (1876). These laws define "unprofessional conduct" by reference to standards such as "gross negligence," "repeated negligent acts," and "incompetence," Cla. Bus. & Prof. Code § 2234(b), (c), (d), and, in some circumstances, in terms of specific offenses, *see id.* §§ 2234(e) (acts related to the practice of medicine involving dishonesty or corruption), 2266

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

(recordkeeping requirement), 2250 (willful failure to comply with requirements relating to informed consent for sterilization procedures) § 2236 (criminal convictions related to the practice of medicine).  To violate AB 2098, a physician or surgeon's conduct must run afoul of both historical conscriptions: a physician or surgeon must violate an established medical standard (the standard of care) that is accomplished by means of specified conduct (conveying information related to the treatment or advice of COVID-19 that is false and contradicted by the contemporary scientific consensus).  Accordingly, the court finds it fits comfortably within the long tradition of California's, and the states', regulation of medical practice, which further supports the court's finding it is constitutional.

D.     Remaining Preliminary Injunction Factors

Plaintiffs assert that the remaining *Winter* factors favor issuing a preliminary injunction, contending that a colorable First Amendment claim supports a finding of irreparable harm; that the public has a significant interest in the protection of First Amendment rights; and that AB 2098 burdens medical professionals' speech.  (Mot. at 29; Reply at 16-17.)  Defendants contend that Plaintiffs have not shown sufficiently concrete irreparable harm warranting a preliminary injunction; California has a strong interest in enforcing AB 2098 to protect patients and the public; and AB 2098's limited reach beyond California's existing medical malpractice laws demonstrates any harm to Plaintiffs would be minimal.  (Opp. at 28-29.)

Because the court finds Plaintiffs have insufficiently demonstrated a likelihood of success on the merits of their claims, the court "need not consider the remaining three" *Winter* factors. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir.2011)); *see also Garcia*, 786 F.3d at 740.  Nevertheless, the court balances them here.  It is settled law that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (alteration omitted) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, (1976)).  And a party "seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury" by sufficiently demonstrating the "existence of a colorable First Amendment claim."

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS        Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1098 (9th Cir. 2022) (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002)).  "But the mere assertion of First Amendment rights does not automatically require a finding of irreparable injury." *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 851 (9th Cir. 2019).  "It is the 'purposeful unconstitutional suppression of speech [that] constitutes irreparable harm for preliminary injunction purposes.'" *Id.* (alteration in original) (quoting *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984)); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.") (citation omitted); *Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citation omitted).  Because the court finds AB 2098 complies with the First Amendment, and the record insufficiently demonstrates instances in which Plaintiffs have, as a matter of fact, altered the advice they intend to give to medical patients as opposed to their concerns they will need to do so, the court finds Plaintiff have insufficiently demonstrated irreparable harm favoring entry of a preliminary injunction.  *See CTIA*, 928 F.3d at 851.

When the party opposing injunctive relief is a government entity, "the third and fourth factors—the balance of equities and the public interest—'merge.'" *Fellowship of Christian Athletes*, 46 F.4th at 1098 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  As a general matter, the court recognizes the "significant public interest in upholding free speech principles" where "the ongoing enforcement of [] potentially unconstitutional regulations would infringe not only the free expression interests of plaintiffs, but also the interests of other people subjected to the same restrictions." *Klein*, 584 F.3d at 1208 (cleaned up).  But Plaintiffs have not demonstrated a likelihood of success on their claims, and, separately, First Amendment freedoms are not *per se* "'beyond regulation in the public interest,'" including "regulation[s] aimed at reducing the risk of 'expos[ing] the community . . . to communicable disease or the latter to ill health or death.'" *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1182 (9th Cir. 2021), *reconsideration en banc denied*, 22 F.4th 1099 (9th Cir. 2022) (second alteration in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                    Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

original) (quoting *Prince v. Mass.*, 321 U.S. 158, 166-67, (1944)).  Here, the record demonstrates that the public has a strong interest in ensuring patients receive truthful medical information based on which they can make informed decisions about their healthcare related to treatments about COVID-19, a virus the California Legislature's findings demonstrate is both the cause of a significant number of deaths and subject to rampant "mis-" and "dis-" information regarding its effective treatment.  In light of these considerations, the court finds AB 2098's implementation is likely to promote the health and safety of California COVID-19 patients and thus the balance of equities and public interest favor denying the Motion.  *See Doe*, 19 F.4th at 1182 (finding public interest "weigh[ed] strongly in favor of denying" preliminary injunction against mandatory COVID-19 vaccination policy in school district where record demonstrated the virus "[c]laimed the lives of over three quarters of a million Americans" and "that vaccines are safe and effective at preventing the spread of COVID-19").

**IV.    Disposition**

While *NIFLA* voided the professional speech doctrine as a categorial rule, it did not abrogate California's ability to regulate licensed professionals any time those measures relate to the provision of professional advice.[5]  *Cf. Tingley*, 47 F.4th at 1071-78; *Del Castillo*, 26 F.4th at

---

[5] The court notes that, outside of the medical profession, other established legal frameworks that arguably can incidentally burden professionals' client-facing speech in the primary pursuit of regulating occupational conduct and ensuring clients are adequately protected.  For example, a seller of securities may be held liable for a materially misleading statement of fact contained within an opinion statement if a proper plaintiff establishes the supporting fact supplied by the speaker is untrue, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017); *Omnicare, Inc. v. Laborers Dist. Council Const. Ind. Pension Fund*, 575 U.S. 175, 186 (2015), and it is impermissible for a lawyer to make materially false statements of law or fact under accepted rules of professional conduct, *see, e.g.*, Cal. Bus. & Prof. Code § 6068(d); ABA Model Rules 4.1(a), 8.4(c).  To the extent the medical profession could be considered unique, the court observes that Ninth Circuit precedent

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01805-FWS-ADS                   Date: December 28, 2022
Title: Mark McDonald *et al.* v. Kristina D. Lawson *et al.*

1219-25; *Doe*, 54 F.4th at 520-21.  As discussed in this Order, and in consideration of binding and persuasive post-*NIFLA* precedent, the court finds Plaintiffs are unlikely to succeed on their constitutional claims.

In the end, Plaintiffs seek a preliminary injunction barring the enforcement of AB 2098, "an extraordinary remedy that may be awarded only if the plaintiff clearly shows entitlement to such relief." *Am. Beverage Ass'n*, 916 F.3d at 754.  For the reasons set forth above, the court finds Plaintiffs have not met that standard.  Accordingly, the Motion is **DENIED**.

**IT IS SO ORDERED.**

---

recognizes the "imperative need for confidence and trust inherent in the doctor-patient relationship."  *See Conant*, 309 F.3d at 636 (citation and internal quotation marks omitted).

**CIVIL MINUTES – GENERAL**

# CERTIFICATE OF SERVICE

Case Name:  **Hoang, et al. v. Bonta**                No.    **2:22-cv-02147-WBS-AC**

    I hereby certify that on <u>January 3, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

    **DEFENDANTS' SUBMISSION OF SUPPLEMENTAL AUTHORITY [E.D. CAL. LOCAL R. 230(M)(2)]**

    I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>January 3, 2023</u>, at Sacramento, California.

           Carolyn Yohn                                    *Carolyn Yohn*
            Declarant                                            Signature

1